**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

ANTONIO GRIFFITH                                                                    PETITIONER

v.                                                                          NO. 2:14-cv-187-KS-MTP

RAYMOND BYRD                                                                      RESPONDENT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Antonio Griffith for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Having considered the submissions of the parties, the record of the state court proceeding, and the applicable law, the undersigned recommends that the Petition [1] be DENIED.

## FACTS[1] AND PROCEDURAL HISTORY

On August 6, 2010, around 7:00 or 7:30 p.m., Ray Butler went to visit his brother, Willie Newsome.  Newsome's nickname was PeeWee.  Newsome was on his riding lawn mower when Butler arrived.  For about thirty minutes, Butler and other guests waited for Newsome to finish mowing his grass, as they had planned to ride horses together.  Antonio Griffith was one of the guests at Newsome's home.

Newsome told his guests not to drink the beers left in his cooler because he was going to drink them when he finished mowing the lawn.  Despite this warning, Griffith drank one of Newsome's beers.

The accounts of what happened next differ.  Butler testified that Newsome chastised

---

[1] The factual summary is taken from the Mississippi Court of Appeals's opinion affirming Petitioner's conviction. *See Griffith v. State*, 123 So. 3d 472 (Miss. App. 2013).

1

Griffith, but there was no physical altercation between them.  Bernard Expose testified that Newsome pushed Griffith.  Frank Rhodes testified that Griffith then walked to the street, and a car picked him up.  Butler testified that Griffith did not immediately leave, but only left after the group was about to leave to ride horses.

The rest of the group left to ride horses.  Rhodes testified that fifteen to twenty men went on the ride.  Rhodes and Butler testified that the group returned about an hour and a half later.

Vincent Brown, a blacksmith/farrier, shod a horse that evening as soon as he arrived. Brown then took a thirty-minute ride with two other men.  The record is not clear if this was the same ride involving the larger group of guests.  Brown returned when Newsome returned.

When the group returned, Griffith appeared suddenly and shot Newsome.  Expose testified that he arrived a few minutes before Griffith and that Griffith spoke to him.  Randy Adams, Rhodes, and Expose testified that Griffith did not say anything to Newsome.  Butler, Adams, and Quinton Rhodes drove Newsome to the hospital, where he was pronounced dead.

Sheriff's deputies found Griffith behind a horse stall at his aunt's house, which was nearby, and they arrested him.  Griffith was charged with murder under Mississippi Code Annotated section 97-3-19 (Rev. 2006).  Dr. Feng Li performed an autopsy on Newsome.  Dr. Li reported that Newsome had died of four gunshot wounds, and the manner of death was homicide.

At the trial, Griffith's aunt, Brenda Hathorn, testified that she saw Griffith hiding in her horse stall and that "he was in a rampage or something."  She testified that "he was drunk and angry."

Additionally, Griffith's mother, Linda Griffith, testified at trial.  Linda had gone by Newsome's house before the shooting.  She saw that Griffith's shirt had grass stains and dirt on

it and that something was wrong with him.  Linda testified that Butler told her that her son and Newsome had been in a little fight.  Linda stayed for about thirty or forty minutes.

Griffith himself testified and admitted to killing Newsome.  Griffith testified that Newsome pushed him and they fought.  Then, Newsome grabbed Griffith by the throat, chocked him, and threatened to kill him.  Griffith pushed Newsome away.  Griffith testified that he had argued before with Newsome, and Newsome had blown those arguments out of proportion.

Griffith testified that his emotions were high after his fight with Newsome.  He testified that he thought for about five minutes about everything Newsome had said, and then he left to get a gun.  Griffith testified he was angry after the fight.  Griffith testified that about twenty minutes had passed from the time of the fight until he shot Newsome.

After a trial on July 26 and 27, 2011, a jury found Griffith guilty of murder.  The circuit court had instructed the jury on the lesser crime of manslaughter.  Griffith filed a motion for a judgment not withstanding the verdict or, in the alternative, a new trial.  On February 24, 2012, the circuit court denied Griffith's motion.  He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections.

On February 24, 2012, Petitioner, through counsel, appealed his conviction to the Mississippi Supreme Court, raising the following ground for relief: "Griffith's conviction for murder, rather than manslaughter, is against the overwhelming weight of the evidence." (State Court Record [8-1] at 103; [8-7] at 30.)  On May 7, 2013, the Mississippi Court of Appeals affirmed Petitioner's conviction in a written opinion. *See Griffith v. State*, 123 So. 3d 472 (Miss. App. 2013), *reh'g denied* Sept. 3, 2013, *cert. denied* Oct. 17, 2013.

On January 13, 2014, Petitioner sought leave from the Mississippi Supreme Court to file

his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds: "Whether the evidence is sufficient to support manslaughter, as opposed to murder." ([8-8] at 1, 20.)  On February 19, 2014, the Mississippi Supreme Court denied Petitioner's application stating,

> The issues raised in the petition either were raised at trial or in the direct appeal in this matter or could have been raised in those proceedings.  The panel finds that the claims are procedurally barred.  The panel therefore finds that the petition should be dismissed.

([8-8] at 62.)

On August 22, 2014, Petitioner filed a second application for leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds (as stated by *pro se* Petitioner):

1.    Ineffectiveness of trial counsel and appeal counsel.

2.    The indictment was defective for omissions.

3.    The State prosecuted Griffith under faulty indictment.

4.    The trial court committed error to instruct jury to lesser offense of manslaughter.

5.    Trial court failed to have Griffith submit to a mental examination.

6.    Griffith was arrested for a charge of murder which the arrest warrant did not have his name on arrest warrant.

7.    The cumulative errors caused a suspect verdict and the jury was tainted.

([8-9] at 10-15.)

On September 4, 2014, the Mississippi Supreme Court denied Petitioner's second application stating,

> After due consideration, we find that these claims are waived: They could have been

4

raised at trial, on direct appeal, or in the prior post-conviction proceeding; and Griffith fails to show cause and actual prejudice to warrant any exceptions. *Simon v. State*, 857 So. 2d 668, 679 (Miss. 2003) (quoting Miss. Code Ann. § 99-39-21); *Culberson v. State*, 580 So. 2d 1136, 1140 (Miss. 1990).

([8-9] at 9.)  The supreme court also warned Petitioner that any future filings deemed frivolous could result in sanctions. *Id*.

On September 29, 2014, Petitioner filed a third application for post-conviction collateral relief in which he asserted the same issues asserted in his second application. ([8-9] at 4-6.)  On October 29, 2014, the Mississippi Supreme Court denied Petitioner's third application stating,

In this, his third application for post-conviction relief, Griffith argues that his indictment was defective and that his trial counsel was ineffective for failing to raise the issue.  Griffith raised these same claims in his last application, and the panel ruled that they were waived: Griffith could have raised the issues at trial, on direct appeal, or in a prior post-conviction proceeding; furthermore, he failed to show cause and actual prejudice to warrant any exception to the waiver bar. *Simon v. State*, 857 So. 2d 668, 679 (Miss. 2003) (quoting Miss. Code Ann. § 99-39-21); *Culberson v. State*, 580 So. 2d 1136, 1140 (Miss. 1990).  The panel also warned Griffith that any future filings deemed frivolous could result in sanctions.

([8-9] at 2.)  The supreme court also found his application to be frivolous and sanctioned Petitioner. *Id*.

On November 24, 2014, Petitioner filed the instant Petition for writ of habeas corpus, asserting the following ground for relief:[2]

Ground 1:     Ineffectiveness of trial and appellate counsel.

      i.    Trial and appellate counsel failed to challenge the indictment, which was defective because it contained the wrong name, birth date, and social security number;

      ii.   Trial and appellate counsel failed to challenge a jury

---

[2] Petitioner's grounds for relief are summarized from his Petition [1] and Memorandum in Support [2].

5

       instruction, which was defective because it contained the wrong name;

    iii.    Trial counsel failed to request a mental evaluation;

    iv.    Trial counsel failed to call Petitioner's family and friends to testify during sentencing;

    v.    Trial and appellate counsel had a conflict of interest with Petitioner;

    vi.    Appellate counsel failed to adequately investigate or research issues for appeal;

    vii.    Appellate counsel failed to challenge the manslaughter instruction.

Ground 2:    Defective indictment.

Ground 3:    State prosecuted under defective indictment.

Ground 4:    Improper jury instruction.

Ground 5:    The trial court erred by failing to submit Petitioner to a mental evaluation to determine his competency to stand trial.

Ground 6:    Petitioner was arrested illegally under an arrest warrant in which Petitioner's name was misspelled.

Ground 7:    Cumulative errors.

## ANALYSIS

### Procedural Default and the *Martinez* Exception

The grounds for relief presented in Petitioner's federal habeas petition were neither presented to the Mississippi Supreme Court on direct appeal nor presented in his first collateral proceeding. Instead, these claims were presented in Petitioner's second collateral proceeding before the Mississippi Supreme Court. In its order denying Petitioner's application to proceed in the trial court, the supreme court held that the claims were waived because "[t]hey could have

6

been raised at trial, on direct appeal, or in the prior post-conviction proceeding . . . ." ([8-9] at 9.)
Thus, the Mississippi Supreme Court found that Petitioner's claims were procedurally barred.

Under the procedural-default doctrine, federal courts are precluded from reviewing a
prisoner's habeas claim where the state court declined to address the claim for failure to meet a
state procedural requirement.  "This Court will not review a question that is independent of the
federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722,
729-30 (1991).  To satisfy the "independent" and "adequate" requirements, the state court's
dismissal must clearly and expressly reflect that it rests on a state procedural bar, and the bar
must be strictly or regularly applied by state courts to the vast majority of similar claims. *Martin
v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).

A state has failed to strictly and regularly apply a procedural rule only when the state
"clearly and unequivocally excuse[s] the procedural default," and when the state fails to apply
the rule to claims "identical or similar" to the petitioner's claim. *Amos v. Scott*, 61 F.3d 333, 339
(5th Cir. 1995).  Petitioner bears the burden of establishing that the State did not strictly or
regularly follow a procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).
Petitioner has not purported to meet this burden.  Thus, his challenge remains procedurally
barred unless an exception applies. *See Truelove v. Mississippi Dep't of Corr.*, 2015 WL
1954430, at *5 (N.D. Miss. April 29, 2015).

A federal court may consider a defaulted claim under two narrow exceptions: cause and
actual prejudice or miscarriage of justice. *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005).
In his Rebuttal [10], Petitioner states that there is a fundamental miscarriage of justice because
he was indicted and tried under the name "Antonio Griffin," and not his true name "Antonio

Griffith."  However, "[t]he fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *see also Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").  Petitioner failed to make any showing, much less a persuasive showing, that he is actually innocent of murder.  In fact, Petitioner testified at trial that he shot and killed Willie Newsome. ([8-3] at 138-48.)  Petitioner has not overcome the procedural bar as to Grounds 2 through 7.  Accordingly, those grounds should be denied.

The United States Supreme Court, however, has created an exception which could excuse Petitioner's procedural default for portions of his claim in Ground 1.  In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to the Court's "unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 132 S.Ct. 1309, 1315 (2012).  The Supreme Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id*. at 1320.

A procedural default can be excused if (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only

8

ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective assistance of trial counsel claim; and (4) state law requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S.Ct. at 1318-19). Although the Supreme Court described the *Martinez* exception as narrow, in *Trevino*, the Supreme Court held that the *Martinez* exception also applies when a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 133 S.Ct. at 1921 (applying the *Martinez* exception to Texas inmates although Texas law allows claims of ineffective assistance of counsel to be raised for the first time on direct appeal).

The Supreme Court has not specifically held that *Martinez* applies to Mississippi's procedural framework, but the undersigned will assume, without deciding, that the second, third, and fourth elements of the *Martinez* exception would be satisfied. As explained below, however, the *Martinez* exception is nevertheless inapplicable because Petitioner has not shown that any of his claims of ineffective assistance of counsel are "substantial."

In Ground 1, Petitioner asserts that both his trial and appellate counsel were ineffective. The United States Court of Appeals for the Fifth Circuit, however, has specifically declined to extend *Martinez* to claims of ineffective assistance of appellate counsel. *See Reed v. Stephens*, 739 F.3d 753, 778 n.16 (5th Cir. 2014); *see also Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding . . . ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of

appellate counsel."); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012).  Thus, Petitioner's claims alleging ineffective assistance of appellate counsel are procedurally barred. Only Petitioner's assertions of ineffective assistance of *trial* counsel will be considered under the *Martinez* exception.

To "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, . . . the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).  An ineffective assistance claim is not substantial if it "does not have any merit" or is "wholly without factual support." *Id*. at 1319.  "*Martinez* makes this substantiality standard equivalent to the standard for obtaining a [Certificate of Appealability]." *Crutsinger v. Stephens*, 576 Fed. App'x. 422, 430 (5th Cir. 2014). A petitioner must therefore demonstrate that reasonable jurists would debate whether the petition states a valid claim of the denial of a constitutional right. *Reed v. Stephens*, 739 F.3d 753, 764 (5th Cir. 2014).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured.  Pursuant to *Strickland*, Petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687; *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective standard of reasonableness").  In order to establish a deficiency, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*.  This Court's "scrutiny of counsel's performance must be highly deferential"

10

and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted).

"To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)).  Further, Petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).  An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Summarily reciting general complaints about counsel's performance without discussing their specific basis or how application of the law purportedly justifies relief does not state a claim for habeas review. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

### Petitioner's Ineffective Assistance of Trial Counsel Claim

*Failure to Challenge the Indictment and Jury Instruction*

In his first allegation of ineffective assistance, Petitioner argues that trial counsel was ineffective for his failure to challenge the allegedly defective indictment.  Petitioner asserts that

the indictment in his criminal case "was for a person named 'Antonio Griffin' with a date of

birth and a social security number of which in fact 'is not' Griffiths [sic]." ([2] at 3.)  Indeed,

Petitioner's indictment lists the name "Antonio Griffin." ([8-1] at 10.)  The indictment also

contains a footer which states "GRIFFIN, Antonio-DOB 09-09-1981 SSN 5XX-XX-3898 B/M."

*Id*.  Petitioner asserts that his date of birth is 04-04-1981 and the last four digits of his social

security number are 3848.[3]

      At trial, after Petitioner was sworn to testify and spelled his last name, the state informed

the Court that "the indictment reads G-R-I-F-F-I-N.  And that's what he has been referred to

throughout.  That's what the people thought he was called.  But apparently it is Griffith." ([8-3]

at 133.)  The trial judge responded by stating "[m]otion granted. Bring the jury in." *Id*.

      Thus, the record suggests that the indictment was amended to reflect the correct spelling

of Petitioner's name.  However, even if the indictment were not amended, Petitioner's claim

lacks merit because there is no reasonable probability that, but for counsel's alleged errors, the

result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  In Mississippi,

"the primary purpose of an indictment is to put a defendant on notice of the charges against him

so he is able to prepare an adequate defense." *Smith v. State*, 35 So. 3d 549, 551 (Miss. App.

2009) (finding no merit in appellant's claim that his indictment was defective because it

contained clerical errors concerning his name, social security number, and date of birth).  "When

an indictment sufficiently puts a defendant on notice of the charges against him, minor technical

errors are deemed harmless." *Id*.  Petitioner has not demonstrated that he lacked notice of the

---

[3] It appears that all of the number fours in Petitioner's date of birth and social security number were mistakenly replaced with nines.

charges against him or that the wrong person was indicted.

Moreover, had trial counsel challenged the indictment, the trial court simply would have corrected the errors, and Petitioner's trial would have continued. *See Britton v. State*, 130 So. 3d 90, 95 (Miss. App. 2013); *Evans v. State*, 499 So. 2d 781, 784-85 (Miss. 1986); *Richardson v. State*, 769 So. 2d 230, 233 (Miss. App. 2000); *Neal v. State*, 879 So. 2d 1111, 1112 (Miss. App. 2004). Nothing in the record indicates that the outcome of the trial would have been any different or that the actual result of his trial was fundamentally unfair or unreliable.

Petitioner also argues that trial counsel was ineffective for not challenging jury instructions which contained the name "Antonio Griffin." Jury Instruction No. 2, however, states:

> The jury is instructed that for purposes of this trial, the defendant, Antonio Griffith, is sometimes inadvertently referred to as Antonio Griffin, both in evidence, testimony, and jury instructions. The jury is to disregard the misspelling of his last name. Antonio Griffin and Antonio Griffith are one and the same person for purposes of this trial.

([8-1] at 66.) Additionally, the jury verdict states: "We the jury find the defendant Antonio Griffith guilty of murder." ([8-1] at 85.)

Thus, any failure by trial counsel to object to the name "Griffin" on the jury instructions was harmless. There is no reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner has not demonstrated that reasonable jurists would debate whether the Petition states a valid claim for the denial of a constitutional right with respect to trial counsel's failure to challenge the indictment or jury instruction. Thus, Petitioner cannot overcome the procedural bar as to these claims.

*Failure to Request Mental Evaluation*

Petitioner claims that trial counsel was ineffective for failing to file a motion requesting that Petitioner undergo a mental evaluation.  Petitioner simply argues that "this was a serious charge for a murder and he should have had a mental evaluation to determine whether he was competent to stand trial." [2] at 4.  However, "[t]here can be no deficiency in failing to request a competency hearing where there is no evidence of incompetency." *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989).  Petitioner has failed to show that trial counsel had a basis on which to request a mental evaluation.  Additionally, Petitioner has failed to show that, had counsel filed such a motion, the trial court would have found Petitioner to be incompetent to stand trial.[4]  In other words, Petitioner has not shown–through medical or psychiatric records or any other means–that a mental evaluation would have changed the outcome of the trial.

Accordingly, Petitioner has not shown any deficient performance by counsel in the *Strickland* sense, nor has he demonstrated any prejudice.  Petitioner has not demonstrated that reasonable jurists would debate whether the Petition states a valid claim for the denial of a constitutional right with respect to trial counsel's failure to file a motion requesting that Petitioner undergo a mental evaluation.  Thus, Petitioner cannot overcome the procedural bar as to this claim.

*Failure to Call Witnesses*

Petitioner claims that trial counsel was ineffective for failing to call Petitioner's family and friends to testify on his behalf during sentencing.  "'To prevail on an ineffective assistance

---

[4] Indeed, the record demonstrates that Petitioner testified at trial and interacted with the trial judge at various times, and the undersigned can discern no basis upon which the trial court could have found that a mental evaluation was warranted.

claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010) (holding that a defendant was not prejudiced by counsel's failure to discover and present additional mitigating evidence during sentencing phase of capital murder trial) (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)).  Petitioner has failed to specifically identify the people he wanted to have testify at the sentencing hearing, has not provided any affidavits from witnesses regarding their proposed favorable testimony, and has not shown that the witnesses were available for trial.

Additionally, Petitioner has failed to present any mitigating evidence that would have resulted in a "significantly less harsh" punishment. *See Waters v. Quarterman*, 2007 WL 7144641, at *8 (Jan. 8, 2007) ("Where ineffective assistance of counsel is alleged during the punishment phase of a non-capital case, a petitioner must demonstrate that the sentence she received would have been "significantly less harsh" but for the deficient performance of counsel) (quoting *Daniel v. Cockrell*, 283 F.3d 697, 706 (5th Cir. 2001)).  In fact, Petitioner has not demonstrated that he was eligible for a reduced sentence.  At the time Petitioner was sentenced by the trial court, Mississippi Code Annotated § 97-3-21 stated, "[e]very person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary."  This statute mandates a sentence of life imprisonment and does not appear to allow the trial court discretion once a conviction for murder has been returned. *See Smith v. State*, 922 So. 2d 43, 46 (Miss. App. 2006).

Petitioner has not demonstrated that reasonable jurists would debate whether the Petition

15

states a valid claim for the denial of a constitutional right with respect to trial counsel's failure to call Petitioner's family and friends to testify on his behalf during sentencing.  Thus, Petitioner cannot overcome the procedural bar as to this claim.

<u>Conflict of Interest</u>

Finally, Petitioner claims that trial counsel was ineffective due to a conflict of interest. Petitioner argues that a conflict arose because trial counsel failed to raise issues, such as the defective indictment, despite the fact that Petitioner requested that the issues be raised.  "To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a habeas petitioner must show that his attorney failed to pursue some plausible defense strategy or tactic due to the conflict of interest." *Gutierrez v. Thaler*, 2011 WL 3875398, at * 7 (S.D. Tex. Aug. 30, 2011).  Petitioner has failed to demonstrate that there was an actual conflict in this case.  A personality conflict or a defendant's mere disagreement with his attorney's strategy does not give rise to a conflict. *Rowsey v. State*, 188 So. 3d 486, 499 (Miss. 2015); *Vega v. Johnson*, 149 F.3d 354, 360 (5th Cir. 1998); *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007); *Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983); *Sims v. Cockrell*, 2002 WL 1315797, at *5 (N.D. Tex. June 12, 2002) ("The mere fact that a criminal defendant and his attorney have personality conflicts or disagreements regarding trial strategy does not constitute an actual conflict of interest requiring the attorney to be disqualified.").

Petitioner has not demonstrated that reasonable jurists would debate whether the Petition states a valid claim for the denial of a constitutional right with respect to trial counsel's alleged conflict of interest.  Thus, Petitioner cannot overcome the procedural bar as to this claim.

16

## CONCLUSION

Petitioner failed to present any of his claims to the state court in a procedurally proper manner.  Petitioner has failed to show any "cause" under the cause and prejudice test that would allow this Court to reach the merits of his claims despite the procedural bar.  Additionally, because Petitioner has failed to demonstrate that his ineffective assistance of trial counsel claims are substantial, the *Martinez* exception is inapplicable.  The Court's decision not to review the claims on their merits will not result in a fundamental miscarriage of justice because Petitioner has failed to show the requisite probability as a factual matter that he did not commit the crime of murder.  Therefore, Petitioner's claims are procedurally barred.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the relief sought in Griffith's Petition [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions

accepted by the district court to which the party has not objected. *Douglass v. United Servs.*

*Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 29th day of June, 2016.

s/ Michael T. Parker
United States Magistrate Judge